IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF NEW YORK

| | | |
|---|---|---|
| AGRANA FRUIT US, INC. | ) | CASE NO. |
| | ) | |
| Plaintiff, | ) | JUDGE: |
| | ) | |
| -vs- | ) | |
| | ) | **COMPLAINT** |
| INGREDIENTRADE INC. | ) | |
| | ) | **(Jury Demand Endorsed Hereon)** |
| Defendant. | ) | |

Plaintiff Agrana Fruit US, Inc. ("Agrana"), by and through its counsel, and states for its Complaint (the "Complaint") against Defendant Ingredientrade Inc. ("Defendant") as follows:

## **PARTIES**

1.  Agrana is, and at all times mentioned herein was, an Ohio corporation with its principal place of business located in Brecksville, Ohio.

2.  Upon information and belief, Defendant is, and at all times mentioned herein was, a New York corporation, with a principal place of business located in New York, New York.

3.  This action arises out of a contract between Agrana and Defendant.

4.  Agrana is a food supply company.

5.  Defendant is a food import company.

## **JURISDICTION VENUE AND APPLICABLE LAW**

6.  This Court possesses original jurisdiction over this action under 28 U.S.C. § 1441(a) pursuant to 28 U.S.C. § 1332 (diversity of citizenship jurisdiction) inasmuch as:

    (a)   Agrana is an Ohio corporation with a principal place of business in Ohio, and is, thus, a citizen of Ohio;

    (b)   Defendant is a New York corporation with a principal place of business in New York, and is, thus, a citizen of New York;

Block DocID

(c) As set forth more fully below, Agrana seeks relief in excess of $75,000.

7. Venue is proper in the Southern District of New York under 28 U.S.C. § 1391 because Defendant operates in this District and Defendant conducted activity in this District that gave rise to Agrana's claim for relief.

## FACTS COMMON TO ALL COUNTS

8. On or about December 7, 2021, Defendant and Agrana entered into an agreement (the "Contract") by which Defendant would supply diced pineapple to Agrana. A true and correct copy of the Contract is attached hereto as **Exhibit A**.

9. Defendant was to supply diced pineapple (the "Product") to Agrana.

10. The Contract provides parameters and requirements for the diced pineapple and states "ALL THE PARAMETERS LISTED IN THIS DOCUMENT ARE MANDATORY REQUIREMENTS. If any deviation to these tolerances is detected during sampling or usage by Agrana, its customers or consumers, a complaint with potential rejection and claim will be issued…" Ex. A, ¶ Specification for Pineapple Diced, p. 1.

11. The parameters provided include parameters for foreign material, such as metal—which has a zero tolerance in finished product samples. *Id.*

12. The Contract also requires compliance with the Food Safety Modernization Act ("FSMA"). *Id.* at General Specification Contaminants and Microbiology Appendix, p. 4.

13. The Contract also requires Defendant, as a supplier, to have a metal risk management/metal detection system in place. *Id.* at Foreign Object Policy for Raw Material Suppliers.

14. Defendant supplied the Product to Agrana.

15. Defendant's first deliveries of the Product were received into Agrana's warehouse on March 15, 2022.

16. Agrana began production using the Product on December 22, 2022.

17. On December 28, 2022, metal pieces were found in the Product.

18. On December 29, 2022, more metal pieces were found in the Product, and Agrana notified Defendant.

19. On January 6, 2023, more metal pieces were found in the Product.

20. In an effort to investigate and inspect the Product, Agrana sent additional cases from different lots and different suppliers for inspection. Metal, similar to the metal found in the Product, was found in a case from Defendant.

21. As a result, Agrana submitted its formal claim to Defendant on February 17, 2023, for $611,399.59.

22. Defendant did not respond to Agrana's formal claim, or to subsequent written claims from counsel.

23. On September 7, 2023, counsel for Agrana contacted counsel for Defendant to notify Defendant that Agrana planned to inspect the remaining Product to determine which lots were adulterated, and that the inspection would cost approximately $120,000.

24. Counsel for Defendant did not respond.

25. Agrana had the remaining Product inspected at a cost of $114,677.

26. Metal, similar to that found in the earlier inspections, was found in cases of the Product. Copper wire was also found in a case of Product.

27. In total, three different types of metal were found in Product from at least four different production dates.

28. Agrana was unable to isolate the affected Product due to the pervasive nature of the adulteration.

29. Agrana has incurred damages totaling $726,071.59 relating to the damaged Product, inspection of the Product, freight and handling fees, storage fees, and disposal costs.

## COUNT I: BREACH OF CONTRACT

30. Agrana adopts and incorporates by reference the allegations contained in paragraphs 1 through 28 as if fully rewritten herein.

31. Agrana, as a food supplier entered into the Contract with Defendant, whereby Defendant would supply the Product to Agrana.

32. The Contract requires Defendant to supply product that did not contain foreign material, such as metal, requires Defendant to comply with the FSMA, and requires Defendant to have a metal risk management/metal detection system in place.

33. Defendant supplied the Product to Agrana in or around March 2022.

34. On multiple occasions and over several inspections of the Product, Agrana found metal pieces in the Product.

35. The metal pieces in the Product constitute a breach of the Contract by Defendant.

36. Agrana has fully performed all its obligations under the Contract.

37. As a result of Defendant's breach, Agrana has incurred damages totaling $726,071.59 relating to the damaged Product, inspection of the Product, freight and handling fees, storage fees, and disposal costs.

## COUNT II: UNJUST ENRICHMENT
*(Pled in the Alternative to Count I)*

38. Agrana incorporates herein by reference all allegations and statements contained in the previous paragraphs.

39. Agrana purchased the Product from Defendant, paying Defendant for the Product.

40. Defendant was enriched, receiving the benefit of Agrana's purchases, at the expense of Agrana.

41. Defendant supplied adulterated Product.

42. Agrana also paid for the damaged Product, inspection of the Product, freight and handling fees, storage fees, and disposal costs.

43. It is against equity and good conscience to permit Defendant to be unjustly enriched when Defendant supplied unusable, adulterated product.

44. Agrana has incurred damages totaling $726,071.59 relating to the damaged Product, inspection of the Product, freight and handling fees, storage fees, and disposal costs.

**COUNT III: BREACH OF IMPLIED WARRANTY OF MERCHANTABILITY**
*(New York Uniform Commercial Code Law § 2-314)*

45. Agrana incorporates herein by reference all allegations and statements contained in the previous paragraphs.

46. At the time it entered into the Contract, Defendant was fully informed and aware of the particular purposes for which Agrana required the Product.

47. Defendant impliedly warranted to Agrana that Product would be merchantable and fit for the particular purposes intended.

48. Defendant had actual knowledge of the specific uses, purposes and requirement for which Agrana purchased the Product.

49. Defendant was also aware that Agrana relied upon Defendant's skill and judgment that the Product delivered would be fit for such uses, purposes and requirements.

50. Defendant therefore warranted to Agrana that the Product would be fit for such uses, purposes and requirements.

51. The Product was defective in that it was adulterated with metal pieces.

52. The defects in the Product caused it to be unusable and therefore worthless.

53. Defendant breached its implied warranties to Agrana because the Product was not merchantable or fit for the particular purposes for which it was intended.

54. As a direct and proximate result of Defendant's breaches of implied warranties, Agrana has incurred damages totaling $726,071.59 relating to the damaged Product, inspection of the Product, freight and handling fees, storage fees, and disposal costs.

## PRAYER FOR RELIEF

**WHEREFORE,** Agrana Fruit US, Inc. respectfully seeks that this Court enter judgment as follows:

A. Award Agrana damages related to the adulteration of the Product, in an amount to be proven at trial but believed to be in excess of $726,071.59 plus reasonable attorney fees and costs;

B. Award Agrana prejudgment interest to the extent permitted by law; and

C. Award Agrnana such other and further relief as the Court may deem just and proper.

Dated: November 17, 2023              Respectfully Submitted:

**BENESCH, FRIEDLANDER, COPLAN & ARONOFF, LLP**

By:   */s/ Deana S. Stein*
      Deana S. Stein (DS5047)
      Eric Larson Zalud (*pro hac vice forthcoming*)
      Clare R. Taft (*pro hac vice forthcoming*)
      127 Public Square, Suite 4900
      Cleveland, OH 44114
      T: (216) 363-6170
      F: (216) 363-4588
      E: dstein@beneschlaw.com

ezalud@beneschlaw.com
ctaft@beneschlaw.com
*Attorneys for Plaintiff Agrana Fruit US, Inc.*

## **DEMAND FOR JURY TRIAL**

Plaintiff Agrana Fruit US, Inc. hereby demands a jury trial by the maximum permitted jurors in the above-entitled action.

Dated: November 17, 2023                    Respectfully Submitted:

**BENESCH, FRIEDLANDER, COPLAN & ARONOFF, LLP**

By:    */s/ Deana S. Stein*
Deana S. Stein (DS5047)
Eric Larson Zalud (*pro hac vice forthcoming*)
Clare R. Taft (*pro hac vice forthcoming*)
127 Public Square, Suite 4900
Cleveland, OH 44114
T: (216) 363-6170
F: (216) 363-4588
E: dstein@beneschlaw.com
   ezalud@beneschlaw.com
   ctaft@beneschlaw.com

*Attorneys for Plaintiff Agrana Fruit US, Inc.*